# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:20-CV-00102-KDB-DSC

| | |
|---|---|
| Phillips Landing of Statesville, LP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| KeyBank, National Association, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on Defendant KeyBank National Association's Motion for Summary Judgment, (Doc. No. 24), which Plaintiff Phillips Landing of Statesville opposes. The Court has carefully reviewed the motion and considered the parties' briefs and exhibits. For the reasons discussed below, the Court will **GRANT** the motion and enter Summary Judgment in favor of Defendant.

## I. RELEVANT BACKGROUND

Plaintiff Phillips Landing of Statesville, LP ("Phillips") is a North Carolina limited partnership that owns a residential apartment development in Iredell County, North Carolina known as Phillip's Landing Apartments (the "Property"). Am. Compl., Doc. No. 4, ¶¶ 1, 9. Defendant KeyBank National Association ("KeyBank") is a national banking association with its headquarters in Cleveland, Ohio. Am. Compl., Doc. No. 4, ¶ 4; Answer, Doc. No. 16, ¶ 4. This dispute arises out of Phillips' completion of a loan application with KeyBank to refinance the Property. Motion, Doc. No. 24-1 at 6; Motion, Doc. No. 29 at 1-2.

1

The Property secured a promissory note in favor of Morgan Stanley Mortgage Capital, Inc. that had a maturity date in April 2014. Motion, Doc. No. 29 at 1. In 2014, Phillips began to pursue financing in order to refinance the original Morgan Stanley loan. *Id.* Phillips first contacted KeyBank and completed a loan application in 2014, but ultimately chose a different lender. Am. Compl., Doc. No. 4, ¶¶ 14, 19; Motion, Doc. No. 24-1 at 7.

Phillips then contacted KeyBank again to apply for a loan in 2017, this time to ensure that Phillips could satisfy any judgment that might be entered in connection with a lawsuit related to the 2014 loan. Am. Compl., Doc. No. 4, ¶¶ 24-25; Motion, Doc. No. 24-1 at 7. Believing that KeyBank could (and would) close the loan in a short period of time, Phillips settled the lawsuit and executed a settlement agreement in July 2017 that required it to obtain another refinancing of the original Morgan Stanley loan by May 2018. Motion, Doc. No. 29, at 2. Phillips then formally applied for a loan from KeyBank.

In furtherance of Phillips' loan application, KeyBank and Phillips agreed on the "Second KeyBank Term Sheet" ("Term Sheet") on October 11, 2017, which described the general terms of KeyBank's potential loan to Phillips and the terms governing KeyBank's due diligence process. The Term Sheet required Phillips to pay a $50,000 term sheet deposit, including a non-refundable $5,000 underwriting fee. In addition to specifying that the loan application was "subject to Lender's internal underwriting committee approval, due diligence and other conditions," the Term Sheet also stated:

> This Term Sheet is provided for discussion purposes only and does not constitute a commitment to lend or an agreement to issue a commitment. Its terms are not all inclusive and are subject to Lender's internal underwriting committee approval, Lender's due diligence and other conditions, and satisfactory market conditions . . . . No agreement (oral or otherwise) that may be reached during negotiations shall be binding upon the parties unless a commitment letter and final Loan documents have been executed by all parties . . . .

2

The Term Sheet further provided that if the loan did not close, "[t]he deposit less the underwriting fee and any out-of-pocket expenses plus internal due diligence cost incurred by Lender shall be refunded to Borrower." Exh. 1.1, Doc. No. 24-2 at 13-14.

Phillips paid the Term Sheet Deposit, which included the underwriting fee. KeyBank then asked Phillips to complete a borrower information sheet, which requested certain disclosures regarding Phillips, its indemnitor Larry Dean Austin ("L.D. Austin") (who holds a 99% ownership interest in Phillips), and Janus Development Company ("Janus") (which holds a 1% ownership interest in Phillips). Specifically, this information sheet requested information regarding existing mortgages and other debts, financial references from others with whom they had a credit relationship, prior bankruptcies and defaults, and prior criminal charges and convictions. Phillips returned the completed borrower information sheet to KeyBank on December 5, 2017. In their responses, Phillips and L.D. Austin represented that L.D. Austin filed personal bankruptcy in January 2012 and that he did not default on any loans besides those at issue in the bankruptcy. Exh. 1.2, Doc. No. 24-2 at 22. With respect to his criminal background, L.D. Austin represented that his wife filed charges against him during a difficult divorce in the mid-90s, but that the matter was resolved by L.D. Austin pleading guilty to one count of communicating threats and paying a fine for $140. *Id.* at 23.

However, in the course of its due diligence, KeyBank obtained information revealing that L.D. Austin had not fully disclosed all of his prior foreclosures and criminal history. A Vcheck Global credit and background report revealed that L.D. Austin faced four prior foreclosures, one of which occurred in May 2013 after his personal bankruptcy. L.D. Austin's criminal records included two DWIs (one charge and one conviction) and one conviction for "assault on a female"

3

that were not disclosed in his responses on the borrower information sheet. Consequently, KeyBank denied the loan.

KeyBank claims to have spent $19,256.84 in out-of-pocket due diligence expenses and refunded Phillips the $25,743.16 left over from the term sheet deposit after KeyBank subtracted its expenses and the non-refundable underwriting fee. Am. Compl., Doc. No. 4, ¶ 34; Answer, Doc. No. 16, ¶ 34. KeyBank outlined its expenses in the following chart:

| Description | Supporting Exhibit | Term Sheet Deposit | Underwriting Fee | Bills Submitted | Balance |
|---|---|---|---|---|---|
| Deposit | 1 | $50,000 | | | $50,000.00 |
| Appraisal fee | 1.4 | | | (5,000.00) | $45,000.00 |
| Appraisal RIMS ordering fee | 1.5 | | | (81.00) | $44,919.00 |
| Property Condition Report | 1.6, 1.8 | | | (2,000.00) | $42,919.00 |
| Phase I report & review fee | 1.7, 1.8 | | | (1,800.00) | $41,119.00 |
| Insurance review | 1.9 | | | (1,500.00) | $39,619.00 |
| Flood certification | 1.10 | | | (24.00) | $39,595.00 |
| Site inspection fee | 1.11 | | | (916.84) | $38,678.16 |
| Polsinelli PC invoice | 1.12 | | | (6,450.00) | $32,228.16 |
| Vcheck invoices | 1.13 | | | (1,485.00) | $30,743.16 |
| Underwriting Fee | 1.1 | | (5,000.00) | | $25,743.16 |
| Amount returned to Phillips | | | | | $25,743.16 |
| Totals | | 50,000 | (5,000.00) | (19,256.84) | 25,743.16 |

After being denied the loan from KeyBank, Phillips obtained a short-term bridge loan from an interim lender, ROC Debt Strategies. Phillips then filed a lawsuit against KeyBank on July 16, 2018, which was removed to the Western District of North Carolina. *Phillips Landing of Statesville, LP, v. KeyBank, National Association*, W.D.N.C. No. 5:18-cv-00133-MOC-DCK; Am. Compl., Doc. No. 4, ¶ 8; Answer, Doc. No. 16, ¶ 8. The parties stipulated to a dismissal of this 2018 lawsuit without prejudice in August 2019 and agreed to use the discovery from the dismissed lawsuit in any future case. Am. Compl., Doc. No. 4, ¶ 8; Answer, Doc. No. 16, ¶ 8.

On August 4, 2020, Phillips filed its Complaint in this action asserting claims for (1) breach of contract, (2) breach of duty of good faith and fair dealing, (3) negligent misrepresentation, and (4) unfair and deceptive trade practices. Compl., Doc. No. 1. On August 11, 2020, Phillips filed an Amended Complaint abandoning its claim for unfair and deceptive trade practices but retaining the first three claims. Am. Compl., Doc. No. 4. At the Motion to Dismiss stage, the Court dismissed all but Phillips' breach of contract claim. *See* Orders, Doc. Nos. 14, 15. With respect to the breach of contract claim, Phillips alleges that (1) "Defendant breached the terms and conditions of that contract by taking Plaintiff's funds and failing to legitimately, fairly, and reasonably evaluate Plaintiff's loan request," and (2) "Defendant breached the terms and conditions of the parties' contract by failing to return to Plaintiff all monies Defendant held." Am. Compl., Doc. No. 4, ¶¶ 38-39.

On December 17, 2020, Phillips requested leave to include additional damages in its breach of contract claim, which KeyBank opposed. Motion, Doc. No. 17; Memo, Doc. No. 20. On January 12, 2021, the Court denied Phillips' motion finding that Phillips' request was "untimely and brought in bad faith." *Id.*

Now before the Court is KeyBank's Motion for Summary Judgment with respect to Phillips' sole remaining breach of contract claim.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)); *see United States, f/u/b Modern Mosaic, LTD v. Turner Construction Co., et al.*, 946 F.3d 201, 206 (4th Cir. 2019).

5

A factual dispute is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Vannoy v. Federal Reserve Bank of Richmond*, 827 F.3d 296, 300 (4th Cir. 2016) (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact through citations to the pleadings, depositions, answers to interrogatories, admissions or affidavits in the record. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003)**.** "The burden on the moving party may be discharged by 'showing' . . . an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial," *Id*. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id*. at 324.

In determining if summary judgment is appropriate, "courts must view the evidence in the light most favorable to the nonmoving party and refrain from weigh[ing] the evidence or mak[ing] credibility determinations." *Variety Stores,* 888 F.3d at 659 (internal quotation marks omitted) (quoting *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017)); *see Modern Mosaic* at *2. "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015) (quoting 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2728 (3d ed.1998)).

However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (internal citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Also, the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *Id*. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Id*. at 249-50.

In the end, the question posed by a summary judgment motion is whether the evidence as applied to the governing legal rules "is so one-sided that one party must prevail as a matter of law." *Id*. at 252.

### III. DISCUSSION

The parties agree that North Carolina law applies to Phillips breach of contract claim. To succeed in a breach of contract claim, a Plaintiff must show the "(1) existence of a valid contract and (2) breach of the terms of that contract." *Bank of Am., N.A. v. McFarland*, 263 N.C. App. 15, 17 (N.C. Ct. App. 2018) (citing *Poor v. Hill*, 138 N.C. App. 19, 26 (2000)).

For purposes of this motion, the Court assumes that Phillips and KeyBank entered into a valid and binding contract under which Phillips agreed to pay fees in exchange for KeyBank's agreement to evaluate Phillips' loan application legitimately, fairly, and reasonably. Phillips alleges that it has produced evidence showing genuine issues of material fact as to whether KeyBank breached the parties' agreement by delaying for several months before informing Phillips that it would not be going through with the loan and using "the pretextual excuse" that L.D. Austin's previous bankruptcy was the reason it decided not to go through with the loan.

7

Phillips claims that KeyBank knew about his bankruptcy since 2014 because it was included on his resume submitted to KeyBank, yet KeyBank still assured him the loan would close. *Id.* at 5. As for L.D. Austin's criminal history, Phillips does not contest that L.D. Austin failed to disclose all of his criminal charges[1] but argues the non-disclosure of L.D. Austin's criminal history was not the reason KeyBank told Phillips the loan was denied. Rather, KeyBank told Phillips it was L.D. Austin's prior foreclosures that concerned KeyBank.

Phillips is attempting to create a genuinely disputed issue of material fact where there are only undisputed and/or irrefutable material facts. KeyBank has proffered substantial credible evidence that it evaluated Phillips' loan application in good faith and incurred over $19,000 in due diligence expenses. KeyBank has accounted for all of its due diligence expenses dollar-for-dollar. Phillips fails to address, or dispute, KeyBank's itemized list of expenses incurred in evaluating the loan application. Exh. 1.3, Doc. No. 24-2 at 26-27. Also, Phillips does not produce any evidence suggesting that any of the expenses were incurred illegitimately, unfairly, or unreasonably. Rather, Phillips points to two reasons why there is a genuine question of material fact as to whether KeyBank breached the contract: (1) an alleged delay for several months before being informed that the loan application had been denied ("backing out of the deal at the last minute") and (2) KeyBank's reason for denying the application, as evidence of a lack of legitimate, fair, and reasonable evaluation. Memo, Doc. No. 29 at 4.

---

[1] Phillips asserts that while L.D. Austin did not list the correct specific charges, he did disclose the underlying incident with his wife which resulted in criminal charges (although this would still not explain his DWIs charges and conviction). Memo, Doc. No. 29, at 6. He further argues that L.D. Austin's failure to disclose his DWIs was because DWIs "in laymen's terms could be considered traffic offenses not required to be disclosed on the Borrower Questionnaire." *Id.* The Court finds both of these arguments unconvincing.

First, Phillips does not specify what part of the loan application process it believes was delayed or when exactly the "several months" delay occurred. Memo, Doc. No. 29 at 5. Phillips was issued the Second Term Sheet on October 11, 2017. Am. Compl., Doc. No. 4, ¶ 26; Answer, Doc. No. 16, ¶ 26. KeyBank then provided the Loan Information Sheet for Phillips to fill out on November 8, 2017. Reply, Doc. No. 30 at 3; Exh. 1.2, Doc. No. 24-2. Phillips returned the Loan Information Sheet to KeyBank on December 5, 2017, nearly a month later. Doc. No. 24-2 at 25. KeyBank informed Phillips that the loan was not going to be granted by late December 2017. Am. Compl., Doc. No. 4, ¶ 31; Answer, Doc. No. 16, ¶ 31. Therefore, any delay was of Phillips' own making in not returning the Loan Information Sheet earlier.

Phillips' second reason—that KeyBank's reason for denying the application demonstrates a lack of legitimate, fair, and reasonable evaluation—also lacks any supporting evidence. Phillips claims that L.D. Austin's bankruptcy was the reason given for the denial of the loan application and this reason was a "pretextual excuse" because KeyBank was allegedly aware of the bankruptcy. Memo, Doc. No. 29 at 5. Yet, Phillips' argument again misses the mark. It is not the *bankruptcy* that was KeyBank's reason for denying the loan; rather, the evidence establishes that it was the undisclosed foreclosures and criminal history that served as the reason for denying the loan. *See* Exh. 1, Doc. No. 24-2 at 5. There is no dispute that L.D. Austin failed to disclose his post-bankruptcy foreclosure. Phillips represented that L.D. Austin faced no defaults or foreclosures "other than in bankruptcy," Exh. 1.2, Doc. No. 24-2 at 22, but KeyBank's due diligence process revealed otherwise—Phillips failed to disclose at least one foreclosure that occurred in May 2013, months after the bankruptcy concluded. It is also clear from the evidence submitted that L.D. Austin failed to disclose his criminal history.

9

Phillips' attempts to dispute that this was KeyBank's reason for denial of the loan by referencing an interrogatory from the Dismissed Lawsuit that indicated that KeyBank declined Phillips' loan application for "failure to disclose four foreclosures" on the information sheet. Memo, Doc. No. 29 at 5. However, Phillips failed to attach the interrogatory responses to its motion and the Court is not obligated to find and consider them. *See Cray Commc'ns, Inc. v. Novatel Comput. Sys., Inc.*, 33 F.3d 390, 395-96 (4th Cir. 1994) (noting that the Court did not have to "ferret out the facts that counsel had not bothered to excavate"). Even if Phillips did attach the interrogatory, KeyBank's interrogatory response is consistent with its motion for summary judgment because it has proffered evidence that "[e]ither the undisclosed defaults and undisclosed criminal history, standing alone, would have been sufficient for KeyBank to decline Phillips' loan application." Exh. 1, Doc. No. 24-2 at 5. Phillips offers no other evidence that KeyBank's stated reason for denying the loan—the undisclosed forfeitures and criminal history—are pretextual. Thus, Phillips has failed to proffer any evidence that shows a genuine dispute of material fact that KeyBank breached the contract.

The Term Sheet clearly states the amount that KeyBank was required to refund Phillips in the event the loan did not close: "The deposit less the underwriting fee and any out-of-pocket expenses plus internal due diligence cost incurred by Lender shall be refunded to Borrower."[2] KeyBank already returned $25,743.16 to Plaintiff in accordance with the Second Term Sheet and did not retain any money other than the agreed upon due diligence expenses and non-refundable underwriting fee. Memo., Doc. No. 24-1 at 16.

---

[2] Notably, the Second Term Sheet states that such money will be refunded "if, *despite Borrower's best efforts*, a closing does not occur." Exh. 1.1, Doc. No. 24-2 at 14. Phillips' failure to disclose information as requested on the Borrower Information sheet might raise the question of whether Phillips put forth its "best effort" to close the loan. Regardless, KeyBank refunded Phillips the Term Sheet Deposit minus the non-refundable underwriting fee and due diligence costs.

In sum, there is no genuine dispute of material fact regarding the legitimateness, fairness, and reasonableness of KeyBank's evaluation of Phillips' loan application. Furthermore, KeyBank has refunded to Phillips the entire unused portion of the $50,000 term sheet deposit, less the non-refundable underwriting fee, as permitted under KeyBank's term sheet.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT**:

Defendant's "Motion for Summary Judgment" (Doc. No. 24) is **GRANTED,** Plaintiff's Complaint is **DISMISSED**, and **SUMMARY JUDGMENT** is hereby entered in favor of Defendant on the claims in this action. The Clerk of Court is directed to close this case.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: August 9, 2021

Kenneth D. Bell
United States District Judge